318-0409 Thomas Brown, Appellee, by James Angel, v. Illinois State Police, Appealed by Katelyn Ford. Good afternoon, your honors. I'm Ms. Pounsel, and may it please the court, Assistant Attorney General Katelyn Ford, on behalf of Respondent Appellant, Illinois State Police. This court's sound decision in Heitman, rooted in unanimous precedent from the federal courts, makes one thing clear. Those with convictions for misdemeanor crimes of domestic violence cannot possess firearms under federal law. Under the Foyd Act, a circuit court cannot grant relief if doing so would be contrary to federal law. Thus, the circuit court erred in granting Mr. Brown relief because doing so was contrary to federal law. Accordingly, the circuit court's judgment should be reversed for at least three reasons. First, Heitman and all federal courts have concluded that one like Mr. Brown who has a misdemeanor crime of domestic violence conviction and has not obtained a pardon and has not had his civil rights restored cannot possess firearms under federal law and so cannot possess a Foyd card in Illinois. Second, as this court held in Heitman, Mr. Brown's as-applied challenge is premature because he has not even attempted to obtain a pardon. Moreover, the federal courts have universally concluded that Section 922G9, which the Foyd Act incorporates, is constitutional under the Second Amendment, both facially and applied. And third, alternatively, this court should reverse the circuit court's judgment because the circuit court's applied findings concerning Sections 10C2 and 10C3 of the Foyd Act were against the manifest weight of the evidence. From whom would this gentleman seek a pardon? This individual could seek a pardon from the governor of the state of Illinois. Or excuse me, from the state of California. Yes, from California. California law under the United States Supreme Court's precedent in United States v. Beecham says that for purposes of the Section 921A33BII exception, what constitutes civil rights or any sort of restoration mechanisms is the law of the convicting jurisdiction. And so that would be California. Thank you. What other forms of relief might he have besides a pardon? He also can potentially obtain his relief under potentially the federal safety valve under Section 925C of the Federal Gun Control Act. What is the safety valve? It's called the federal safety valve. He can also potentially ask for a pardon. But he hasn't asked for a pardon here. And this Court made clear in Heitman that one can't pursue an as-applied challenge until they pursue the pardon procedure and actually potentially give it a chance to come to fruition. And this makes good sense. What about expungement as after? Potentially he could also ask for expungement. The record is a bit unclear as to whether he has actually done so. But it does seem that California does have some expungement options available. So this type of relief would have to, absent a presidential pardon, I assume that would be controlling, right? I don't think a presidential pardon would be controlling because it's a matter of state law. The only other relief that he could potentially obtain would be through the federal safety valve, and that comes from the U.S. Attorney General and the ATF. Okay, so that's the way he moves into the federal. That would be at force and effect against the state. Yes, that would. Otherwise expungement and pardoning would have to be in the jurisdiction where the conviction was had. Absolutely, Your Honor. Are there procedures set out for the safety valve approach? There are procedures set out for the safety valve approach. It is important to note that the federal safety valve is currently unfunded. But as the Illinois Supreme Court has said in quorum, one can't say that a mechanism of relief is totally futile without ever being tried. And so you could at least put in your application for that, almost like check boxes. But I think the most important thing here is the pardon procedure is well available and well open to Mr. Brown. And as is stated on the report of proceedings. I'm sorry. I thought the briefs also said that there was yet another path there in California, that the statute allowed some kind of petition or something that would allow the misdemeanor to be put on very late court supervision. It could be eliminated that way. I think, Your Honor, that perhaps you are speaking about the firearm rights in California. I just, what I remember is what I read in the briefs. So from my understanding in California, there is the pardon procedure and potentially expungement. I'm definitely not an expert on California law, but that is the law that controls. I think that Mr. Brown is arguing that because California, for its misdemeanors, takes away those firearm rights and then restores them after some misdemeanors, that that means that there's been some sort of restoration of rights and that he could get relief. But that is decidedly false. And that is because both this court in Heitman and the United States Supreme Court in Logan, which this court agreed with in Heitman, has said that for the civil rights exception to apply, that only includes the rights to vote, hold public office, and serve on a jury. So it's not, the Second Amendment is not a civil right implicitly, or perhaps explicitly, I haven't read the full text of the Supreme Court decision, that would be governed under restoration of civil rights. That is correct, because all federal courts have followed and applied Logan, and after the U.S. Supreme Court decided Heller, it did not overrule Logan. And firearm rights are not civil rights in this context. Heller did not overrule Logan. Correct. And what, where was that stated? When you look at the Supreme Court's full jurisprudence on the civil rights restored, and federal courts following Heller, including the United States Court of Appeals for the Seventh Circuit in Schoen, the Ninth Circuit in Chauvin, the Ninth Circuit in Fisher, the Sixth Circuit in Simmel. These are all circuits that are just, you know, limited jurisdiction courts that are interpreting the Heller, correct? They're actually interpreting. Well, they obviously must be having their basis in Heller for this, right? Yes, and they're also interpreting Section 922G9, and are finding that the core civil rights for the civil rights. The Constitutional Court of the United States Supreme Court has not addressed that concept yet, has it? The Supreme Court has not considered the constitutionality of Section 922G9, but every other federal court considering it has found it. The lower courts have. All lower courts who have considered it have found it to be constitutional, both facially and as applied. Has there been any writs of certiorari, to your knowledge? Not to my knowledge at this point. This constitutionality is also present in the Illinois Supreme Court currently in a case called Johnson v. Illinois State Police. And in the motion to cite supplemental authorities that I filed with this court yesterday, I mentioned that issue to bring it to this court's attention as well. And that deals with the constitutionality of Section 922G9, and whether an individual can bring an as-applied challenge. What's the status of that? That has been fully briefed, and it will be argued before the Illinois Supreme Court on November 19th. Will this be affecting our disposition? I do not think it will affect your disposition, Your Honor, because under Heitman, Brown cannot pursue an as-applied challenge because he has not even attempted to avail himself of the pardon procedures. And in the case of Johnson, Mrs. Johnson did avail herself of the pardon procedures and was denied relief. But if it would be decided hypothetically by the Illinois Supreme Court, it would not be, you know, necessary or valid or however you want to characterize it, should he be required to engage in a futile act. So if the Illinois Supreme Court holds that Section 922G9 is unconstitutional, then that would certainly affect this court's decision. But also Heitman is from this court. And Heitman also has fit comfortably within all of the other federal courts who are considering this question of the constitutionality. In addition, Brown's arguments that a long time has passed since his conviction are really inappropriate for this sort of as-applied challenge. In United States v. Chauvin, the Ninth Circuit pointed out that Heller was never supposed to require an individualized hearing to determine if you were properly within the category of 922G9. Allowing these sorts of individualized hearings would really create exceptions to this valid category that Congress did not establish and would undermine Congress's judgment that the risk or potential for domestic violence, not the likelihood, probability, or certainty of that violence, is sufficient. And the Ninth Circuit has been joined by this six- Yes, it could happen. Yes. Not any probability or, it's like the risk is impossible. The risk is possible. And as the federal courts have said, applying intermediate scrutiny, the government has a significant, substantial, and important objective in reducing gun violence. And that is reasonably fit between Section 922G9's purpose of disarming those with misdemeanor crimes of domestic violence. So they're applying intermediate scrutiny. They apply intermediate scrutiny. So if Heller were revisited by the Supreme Court, we might get non-intermediate scrutiny. All lower federal courts, though, have held intermediate scrutiny as appropriate in this context because an individual like Mr. Brown falls outside the core of the Second Amendment because he has this misdemeanor crime of domestic violence conviction. And the core of the right identified in Heller is the right to protect yourself in your home with a firearm. And so when you're not one of those law-abiding citizens who has that right, you're outside of the core. And so you could even really stop the Second Amendment analysis there. But the federal courts that have continued in the two parts. So he has no right to protect himself? He would not because he is not a law-abiding citizen for whom the Second Amendment applies. At least not with a firearm. He could still protect himself, of course, but not with a firearm because doing so would be contrary to federal law. And on that point, Mr. Brown does have a conviction for inflicting corporal injury on his spouse in California. And that is a misdemeanor crime of domestic violence under federal law. What did he do? He, after 9-11, following a bar fight, got into a fight with his then ex-wife. He picked her up and she called. He had a bar fight, not with her? Not with her, no. He got kind of the lesser of it, right? I mean, he was more injured than his drinking buddy, right? You're speaking about the arrest for the bar fight? Yes. This was following drinking. They had gone back to the motel for the conviction with his now ex-wife. After being fairly injured in a bar fight. I think that those are two separate instances. They are, but it gives context to the instance for which. No, Your Honor, I think that the bar fight happened in Illinois. Well, we didn't know. And then in California, they were drinking at a bar, got angry with each other, went back to their hotel, were arguing. He picked her up. She attempted to crawl down his back. And while she was doing so, she was dropped and she got road rash, which is a misdemeanor crime of domestic violence under federal law. It involves an injury that has as an element the use or attempted use of physical force against a domestic relation. And the Ninth Circuit in Chauvin has actually held that inflicting corporal injury on a spouse in California is a misdemeanor crime of domestic violence under federal law. Okay, but this was a plea, wasn't it? This was a plea. A plea. It was a knowing and voluntary plea. Knowing and voluntary plea given probation. Correct. So conviction was rendered under California law. Correct. And because of that conviction, he does not qualify for the section 921A33BII exception because he has not had his civil rights revoked and restored to him, as we discussed in Logan. He has also not obtained a pardon. In terms of the— If we follow Heitman, which is from our district— Yes. This is a reversal, is it not? This is absolutely a reversal, Your Honor. The Circuit Court actually did not even mention Heitman in its analysis in its one-page handwritten order. In addition, the Circuit Court's implied findings here under Section 10c2 and 10c3 of the Act were against the manifest weight of the evidence, and this Court can also reverse on this basis. Section 10c2 of the Act requires Circuit Courts to examine the circumstances regarding the criminal conviction, the applicant's overall criminal history, and his reputation to see if he would act in a manner dangerous to public safety. And Section 10c3 requires the Circuit Court to see if granting relief would not be contrary to the public interest. And you're saying that was against the manifest weight of the evidence? Yes, I am, Your Honor. Yes. And why would that be? It is against the manifest weight of the evidence, which is the traditional standard of review that's used following an evidentiary hearing, which is what we have here. So the opposite conclusion would be clearly apparent? Yes. If you were to reverse his findings? Correct. Then what is the opposite conclusion? The opposite conclusion is Brown's criminal history is showing that he is likely to act in a manner dangerous to public safety, and he has poor decision-making skills and has resorted to violence. If you look on pages 14 and 16, he has the corporal injury for injuring his spouse, of the reported proceedings. He also has a 2005 DUI conviction in Bureau County, Illinois. That's found at page 269 of the common law record. He has a 1997 fifth-degree misdemeanor assault in Minnesota on pages 236 and 237 of the common law. What was the Minnesota charge? The fifth-degree misdemeanor assault. Fifth? Fifth degree? Yes. But all of these go to show that he has an overall reputation for not following the law. I'm not contesting his morality. Physicality. He engages in physicality. Yes, Your Honor. And thus, the circuit court's implied findings were against the manifest weight of the evidence here. Now, did he have some statement from a law enforcement officer? I believe he did have a statement from Bureau County saying that after his DUI, he hadn't had subsequent convictions. From the sheriff. Yes. But that is still not the type of thing that would get him relief under even an as-applied challenge, because as Chauvin, Stimmel, and Fisher have all held, these sorts of individualized determinations are all very inappropriate for as-applied challenges. And when one is still prohibited under federal law, under this Court's holding in Heitman, one can still not obtain a void card regardless of the other factors. You can actually stop the analysis at the federal law point. One minute, please. So we don't really have to concern ourselves with those findings? Yes. That's just an alternative argument if this Court wished to explore it. There are no other questions. We would ask that this Court reverse the circuit court's judgment. Thank you. I don't think so. Thank you very much, Ms. Brewer. Mr. Andrew? Yes. Oh, please, yes. Sorry. Justice Carter, Justice Lind, Justice Holdridge, may it please the Court. This case is about the unanswered question in the quorum concurrence, paragraph 104, footnote 6, where Justice Burke said she wasn't answering, she says, I'm not answering the question whether a State may impermissibly burden a misdemeanor's Second Amendment rights, a misdemeanor who poses no safety risk to the general public by requiring him or her to obtain a pardon before they may lawfully possess a firearm, and whether the State may permanently bar that person from possessing a weapon. And just before Ms. Buell sat down, she made the argument that, well, if we can deny him under the federal statute, we don't need to address the constitutional issue. I would respectfully submit that is exactly the opposite of what the law is, which is if they aren't granted relief under the statute, then you address the constitutional issue, and it's also the exact opposite of what happened in Quorum and, for that matter, in the recent Johnson case, which is up before the Illinois Supreme Court. So basically the question here is, does a perpetual blanket ban all persons convicted of misdemeanor domestic violence violate the Second Amendment in certain cases? We're not contesting that there are certain misdemeanants and felons, for that matter, who should not have a gun, but a problem with blanket bans is they work unusual and very unfair hardships in certain cases, and we believe this is one. First question is, is this a perpetual ban? The State says, no, it's not. The Quorum concurrence says, yes, it is. This Court's decision in O'Neill v. State Police from 2015 says, yes, it is. In fact, I think that was about Paragraph 29. The Evans case, which just recently came down from the First District, says this is a perpetual ban. They talk about the circular nature of federal laws and the State FOIA Act basically creating a, I think the word they use is a merry-go-round, and creating a barricade rather than a bridge to a litigant being able to raise their second, to basically be getting an up or down determination on whether they should get their FOIA and their Second Amendment rights back. What the... Is that file a Heitman decision? Right, and I was the attorney on Heitman. But I think Heitman differs in two ways, Justice Kerr. First is Heitman was actually, I'm sorry, Brown was actually involved in California law, and that differs in one material respect, which is under California law, I believe it's Section, I believe it's Section 9, Section 9, I cited it in my brief, I think it was Page. Well, that would be okay if you cited it in a brief. But basically the issue is there they said after 10 years for a misdemeanor convicted of the charge of Mr. Brown is that they would have their gun rights back, at least if he was living in California. So this has actually created an unknown trapdoor. Well, is that like an automatic or is there a procedural aspect to that? That's actually automatic. Okay. And it is? Yeah. My understanding looking at it is that it's automatic, so you don't actually have to petition. So that was the first way this differs from California, is that the right is automatically restored after 10 years for this situation without any action taken. Although it may create an odd situation where California restores a life and then federal law bans you. So that is, I think, a trap for getting weary. What exactly happens after 10 years? After the 10 years, you wouldn't. Does the case get expunged? What happens? I don't believe it's actually expunged. I mean, without any action taken somehow. Yeah, my understanding is that it's automatic without any action taken. And actually, the expungement was interesting. I think you brought that up on oral argument for Ms. Buell, where you asked about expungement, and there's a section 1204.3, which is mentioned in the briefs. And that section, which I think goes for expungement, also provides that you can do that, but it doesn't restore your gun rights. So Ms. Buell talked about multiple avenues of relief to avoid having to decide a Second Amendment challenge, but most of those are illustrated. The first is that she cites Section 925 of the Gun Control Act, which is listed in the briefs. That hasn't been funded in 25 years, so we can call it a safety valve. The Federal Act. The Federal Act, yes. So even though apparently that would qualify as restoring gun rights, it's futile where there's no money for it for the ATF to adjudicate that. So practically speaking, let's say that avenue has not been closed off, it's just that nobody's home, right? Right. I think she was implying that there was no attempt to go through that process, to knock on the door, so to speak. Would that be sufficient in your mind if there was? If there was a procedure? No, if you knocked on the door. Okay, well. Because the procedure hasn't been eliminated, has it? It hasn't been eliminated. The agency responsible for hearing and determining nobody's home. Right, nobody's home. And effectively, that avenue is out, so without other avenues, it's effectively. You'd get a letter, wouldn't you, that's saying this isn't funded? Yeah, and so we're not going to. There would be an effort to do it. Right. That's a knock on the door. You'd get a letter back saying the funds haven't been there to have a procedure in place yet. That's correct. We could send a letter. Do you have that letter now? No, we've never applied for 925 really because it hasn't been funded for 25 years. But there's nothing to prevent the knocking on the door of that agency. Oh, the ATF? Yes. I suppose we could knock on the door, but they don't have any money to answer. Yep. Okay. Well, the agency's there, isn't there? Yeah, but it's. . . Unless you send a letter to them. Yeah, we can send them a letter to that, but also with a pardon, as I mentioned in my brief, there is absolutely no time for a governor to act on it. And so if you have a governor who believes that Heller was wrongly decided that general citizens shouldn't have guns. . . Is there a guy from California? No, no. No, and that's actually. . . I mean, Gavin Newsom is the governor, and my understanding is he signed a number of bills recently to restrict gun rights. But if someone is hostile to firearm rights, the best procedure for them to take is not to deny the pardon. It's to take no action whatsoever. And so it sits out there indefinitely. And so what we do have here is a perpetual ban. I'm more interested in exploring the other option. Okay. The other option being. . . Being the petition to expunge. Okay. My understanding on the expungement is per Section 1204.3 of the California Penal Code, that does not restore gun rights. So that does not help. . . Well, if the conviction is expunged, then there's no. . . What is there in California? What is there? Signify. . . I mean, how do we know it's not expunged? Because we're operating under a federal statute. Correct. And it's a federal. . . I mean, we're not. But I mean, indirectly, we are. Correct. Well, California is. . . Although the federal statute talks about civil rights restored. And if California basically said, okay, it's been expunged, but we're not granting you your gun rights back, then that procedure does him no good either. Well, but he's not living in California. He's living here. Correct. And that's probably. . . I'm curious about what happens. Okay. In California, because it seems to be very indirect. They say it's expunged. It's gone. But what is there left for him? Well, they say it's expunged. They say it's forever. They say it's expunged, but it's. . . But they don't. . . Under that statute, 1204.3, gun rights are not restored. So I don't think he gains anything from the expungement. Well, the gun rights would not be restored, per se, to California. Right. Correct. But how would that restrict Illinois? Because then California, maybe they've expunged it, but they haven't really given him anything. And then there's still. . . Under federal law, he cannot demonstrate that he's had his gun rights restored. Restored, right. And also, the reason a second amendment as applied challenge is needed to be recognized is because it leads to unusual results. In the Coram case, Paragraph 18, Coram spoke about that the Attorney General conceded an oral argument that had Mr. Coram received one day in jail post-conviction, he would have been eligible to get his FOIA card back because he couldn't serve on a jury or in public office that one day. And this Court said in Furanis that the FOIA statute must be, shortly after Hyman, that the statute must be construed to avoid unusual results because as it currently sits, you have three classes of offenders, minimal offenders who are flat and eligible, moderate offenders who are eligible and will probably get it back, like Mr. Paranis. I'm probably mispronouncing his name. And then more severe offenders who are hypothetically eligible, but no judge in their right mind would give that person a gun. And so it's creating this malpractice trap, I think, for criminal defense attorneys not to have your client serve one day in jail post-conviction. And actually that's also one other thing that came up for relief from Mr. Brown is one option may be to have the plea withdrawn. And as I'm preparing for oral argument, I first thought I knew what this meant, but actually maybe I don't. When I first think of the plea as having the plea withdrawn, it means he's saying I did not understand this, I thought it was time served, and I wasn't going to lose my FOIA card, and I'm never seeing this again. I just pled not guilty and paid the fine to make it go away. That's what I initially thought it meant. One question is could he actually go back, reopen it and say I actually want to be sentenced in jail one day, 18 years after that. I want to serve one day in jail. Then I come out, I've lost the rights, I've had them restored, and now I'm eligible. With respect to the Logan case, I believe that's actually, I think what it's been represented to be is not actually what it says. Logan was decided a free heller prior to the Portsmouth 1882nd Amendment individual right to bear arms and protect themselves. That was before then. Also, Logan is a case where the gentleman in question lost his, he'd been convicted of three batteries in Wisconsin and one felony controlled substance in Illinois, and the court said there that he never lost any civil rights, they weren't restored for purposes of their criminal act. I don't think that really translates into the FOIA aspect. But also, Mr. Logan, to my understanding, never actually, well, he lost his FOIA rights upon conviction of the felony. He never got them back, so he wouldn't be in a position to argue that a loss of FOIA rights, loss of restoration of gun rights is actually civil rights restored. All right. And the reason for the whole civil rights restored, as the pot court said, and I realize most courts have ruled against this, is that basically the whole purpose is that by finding civil rights restored, there's been a finding of trustworthiness, or as Justice Ginsburg said in Logan, a token of forgiveness, that basically for that basis, we find that you are not a danger to the public or others. And also, you would ask, the court had asked about whether 922 had been declared unconstitutional, and actually that has been done in two cases of note. Quorum was the first case where the trial judge found that there was no relief, this was a perpetual ban, and found a second amendment as applied challenge valid as to Mr. Quorum, and then the Illinois Supreme Court later said that was premature because the FOIA statute provides relief. And then in the Johnson case where the trial judge there said this is a perpetual ban, and in this case where you have a woman who was probably the victim of domestic battery not being able to get any relief, and probably as sympathetic as a plaintiff as there was, the court said as applied to her, this is unconstitutional. And one question I believe Justice Holdred asked about protection for himself, and the state said he could protect himself with a firearm, it raises an interesting question. Mr. Brown's wife has a valid FOIA card, and I think everybody's taking the position that she should be able to exercise her full second amendment rights, regardless of what her husband may have done in the past. So I suppose one question is, could she, if somebody broke in, could he grab her weapons, would it be a charge? And finally, the last point is intermediate scrutiny of the state rates. Just because somebody's been convicted of a misdemeanor or domestic battery doesn't mean they lose all rights. Rather, the question is intermediate scrutiny, where the burden of proof is on the government. And as the forum court noted, there's no, the Congress itself did not believe a perpetual ban was necessary, and I believe the Scone courts and other courts have said that, or the person has been a law-abiding citizen for a substantial period of time, they should be entitled to some relief, rather than just basically getting barrier after barrier and never gaining their day in court, up or down. So for those reasons, we believe the judgment of the Putnam County Circuit Court was correct, and we respectfully ask this court to affirm that decision. Thank you, Mr. Anderson. Thank you. Ms. Burak. No, and I have about four points on rebuttal, but Justice Leighton, I actually want to pick up your question about expungement, first of all. So for an expungement, if Mr. Brown has an expungement in California, that can actually help him remove his federal firearm prohibitor here. Section 921 says that there will not be a misdemeanor crime of domestic violence that will count for the federal firearm provision if you have an expungement, a pardon, or have had your civil rights restored, unless that pardon, expungement, or civil rights restored expressly restricts your right to possess firearms. So in California, if Mr. Brown asked for an expungement, received an expungement, and by California law automatically could once again possess firearms, then there's nothing in federal law that would stand in his way of potentially obtaining relief from that federal firearm prohibitor. Second, Heitman actually controls this case. Firearm rights. And you would suggest that if Mr. Angel's representation, that after 10 years, there's an automatic whatever you might call it, erasure of something, would that be arguably akin to an expungement? No. He would need to get an expungement for his criminal conviction for inflicting corporal injury on a spouse. Once that conviction had been either expunged or pardoned, then we look to what is called the Unless Clause of Section 921A33BII. The Unless Clause says that if a state still has a firearm-specific barrier, then you can't possess firearms under federal law either, even if you've been pardoned, expunged, or had your rights restored. So if he had an expungement, and by automatic operation, California was able to remove any sort of prohibition for state law firearm purposes. There's no more federal prohibition. But Mr. Brown hasn't even attempted to obtain that sort of expungement of his criminal conviction, nor has he attempted to obtain a pardon. And that's why under Heitman, he cannot obtain relief and cannot... So it's specific to expungement or pardon? Expungement, pardon, or civil rights restored. And he doesn't have his civil rights restored because of Logan. What do we know about California in this automatic? After 10 years, okay, what... We know that there... What do you know about it? All I know is what it says, which it seems like automatically after 10 years. I don't know the specifics, but I think the important thing is not necessarily that point, but he hasn't even done the first step, which is asking for an expungement or asking for a pardon from his state of conviction, which is California. But back to my point, maybe it's not necessary if there's an automatic... If the automatic, whatever happens automatically after 10 years... It might be an automatic regaining of firearm rights, but it is not an automatic expungement of your criminal conviction, to my knowledge. The criminal conviction... But let's say it is an automatic restoration of firearms rights in California. Yes. Let's assume that. Yeah, we'll assume that. For argument.  Wouldn't that be sufficient? No, absolutely not. Why not? Because under United States v. Logan, the Supreme Court has said that for there to be a restoration of civil rights, it is to vote, hold public office, and serve on a jury. So unless you have that, an expungement of your actual criminal conviction, or a pardon of your actual criminal conviction, it is completely irrelevant if California restores your firearm rights to you. Ah, that Logan was before Heller. But all federal courts following Heller have still used Logan, and the Supreme Court has never overruled Logan. In addition, this is not a perpetual blanket ban, because he still has the opportunity to try and obtain these sorts of mechanisms for relief. I would also like to note that Evans is actually dealing with the felony provisions, not the misdemeanor crime of domestic violence provisions in Section 922g9. So the only way it's relevant to this case is with the Section 10c2 and 10c3 findings, and nothing else. And finally, in Logan, the United States Supreme Court highlighted that there could be disparities between those who were imprisoned versus those who were not. And the Supreme Court said that those disparities were actually acceptable. And any issues with these sorts of disparities were for the legislature, so Congress, and not the courts. Thus, if this Court has no further questions, we'd ask you to reverse the Circuit Court's judgment. Thank you. Thank you very much, Ms. Buell. Thank you both for your arguments today. The motions in this matter are under advisement of defense or as a written decision.